Wallace W. WILSON, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–2085.

United States Court of Veterans Appeals.

April 21, 1995.

Wallace W. Wilson, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Kar-en P. Galla, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

FARLEY, Judge:

This is an appeal from an August 15, 1991, Board of Veterans' Appeals (BVA or Board) decision denying the appellant's claim for entitlement to additional vocational rehabilitation training under chapter 31 of title 38, U.S.Code. For the reasons that follow, the Court will affirm the BVA decision in part and vacate it in part, and remand this matter for further adjudication.

## I.

The appellant entered active duty with the Army in August 1966. Record (R.) at 1. In November 1967, he was hospitalized and diagnosed with a chemical burn of his cornea and "[a]nxiety neurosis, chronic with acute exacerbation, severe." Supplemental Record (Suppl.R.) at 18. The examining doctor reported that his degree of psychiatric impairment was "marked, [he is] medically unfit for further military duty." *Ibid.* A physical evaluation board found the appellant "medically unfit for further military service" (Suppl.R. at 32), and he was honorably discharged from the Army in March 1968 (R. at 1). A June 1968 rating decision granted the appellant service connection for his anxiety neurosis (Suppl.R. at 48), which is currently rated as 70% disabling (R. at 2).

The appellant was provided chapter 31 benefits in November 1969 for a "Computer Program, System Analysis and Design Course" at the Automation Skills Institute. Suppl.R. at 66, 68. He was hospitalized in December 1969, interrupting his training. Suppl.R. at 71. He later resumed his training, but was "terminated by [the] school" in May 1970 due to a "lack of cooperation." Suppl.R. at 79. In June 1970, the appellant entered training at the Control Data Computer Training School in a computer programming course. Suppl.R. at 82. His training was interrupted in September 1970 because he was hospitalized for treatment of his service-connected anxiety disorder.

Suppl.R. at 84, 86. The appellant attempted to reenter training in February 1971 (Suppl.R. at 92), but the Vocational Rehabilitation Board (VRB) found that he needed therapy to enable "him to function in a competitive society" before he would be ready for training (Suppl.R. at 99). The VRB "found [the appellant] [f]easible for training" in August 1972 (Suppl.R. at 105), and he entered into an "Electronic Circuits & Systems–Prep & V7" course at the RCA Institute (Suppl.R. at 106, 124). However, his training there was interrupted due to an academic problem. Suppl.R. at 110, 124. The appellant enrolled in a digital computer operator course at the Control Data Computer Training School in April 1973, but his training was halted because of poor attendance and limited academic ability. Suppl.R. at 112, 115, 125–26. After he missed a few appointments with his VA counselor, his case was inactivated. Suppl.R. at 127.

In February 1977, the appellant requested that he be allowed to receive chapter 31 benefits for a course he was enrolled in at the Technical Career Institute (Suppl.R. at 120, 127), but the VRB found the appellant to be "temporarily medically infeasible and he should be seen in 6 months to note if his progress continues to be steady as claimed" (Suppl.R. at 129). The VRB held that the appellant was "feasible for training" in April 1978. Suppl.R. at 136. Upon completion of the program at the Technical Career Institute in May 1979, the appellant was declared rehabilitated in June 1979. Suppl.R. at 153.

In May 1982, the appellant requested that his "rehabilitation under Chapter 31 be set aside and ... that he be allowed to attend the New York Institute of Technology." R. at 42. A VA counselor granted the appellant's request in December 1983, and he enrolled in the New York Institute of Technology. R. at 8–9; Suppl.R. at 195, 200, 202. The appellant graduated on August 31, 1986, with a Bachelor of Technology degree (R. at 14), and the RO considered him rehabilitated (R. at 11, 18).

Since obtaining his degree, the appellant has complained numerous times that the degree he earned only warranted a technician position with his employer, the Federal Government, and he requested additional vocational rehabilitation under chapter 31 so that

he could go back to school to earn an engineering degree. R. at 19, 23–26, 27, 32–35, 36–37. On January 20, 1988, a VA counseling psychologist reported that the appellant was originally allowed to pursue the degree he received in 1986 because it would allow "him to obtain suitable employment because of a non-service-connected arthritic hip condition." R. at 23. The counselor noted that the appellant had a hip replaced due to arthritis in 1983 (R. at 24), and that the appellant's complaint was that his "current job requires him to lift 40–50 lb. boxes and he feels that this aggravates his arthritis, particularly in light of his right hip replacement" (R. at 25). The appellant also claimed "to have ankylosing spondylitis as well as carpal tunnel syndrome." *Ibid.* (Ankylosing spondylitis is "rheumatoid inflammation of the vertebrae." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (DORLAND'S) 1566 (27th ed. 1988). Carpal tunnel syndrome is "a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow." DORLAND'S at 1632.) The counselor concluded:

> Accepting the veteran's contentions regarding the physical requirements of his current position, we could see that most probably they are not good for his various conditions.... However, we feel that there are many positions available in the field of electronic technology, both in the Government and out of the Government which would not tend to cause further injury to his [non-service-connected] injuries.... It is our feeling that he has been adequately trained, to a level where both his [service-connected] conditions and [non-service-connected] conditions would not be considered to be impairments. What he needs however, is employment assistance to help him to find a more suitable job for him.

R. at 25–26.

In a subsequent report dated January 1990, the VA counselor found that the non-service-connected hip condition was causing "barriers to employability," and stated, "The veteran still contends that his [service-con-

nected] condition, the psychiatric one is something that is related, but he has not offered any proof of that." R. at 34–35. The appellant's request for additional benefits was denied principally because his "service-connected condition does not materially contribute to an employment handicap which prevent[ed] [him] from training for, finding, or keeping a job consistent with [his] abilities, aptitudes, and interests." R. at 38. The appellant submitted a Notice of Disagreement in April 1990. R. at 39. An RO hearing was held, and the appellant testified that his work environment "has become very hostile" and that he was unable to do the job he was hired for, so "I do nothing, I sit at a desk. It has brought me a lot of anxiety, a lot of sleepless nights, a lot of outbursts with my boss." R. at 53.

On August 15, 1991, the BVA denied the appellant's claim for further chapter 31 benefits. The Board held:

> Since [the veteran first began his current job] there has been no indication whatsoever of any worsening of his service-connected disorder which would preclude him from working in the field of electronics technology. While the veteran contends that his service-connected disorder ultimately causes him to be anxious and, therefore, impedes his job performance, the record is devoid of any indication that this is the case or that the veteran's service-connected disorders have been exacerbated such as to interfere with his current employment.

> While we recognize that the veteran may have found that his current degree imposes a barrier to certain employment opportunities within the electronics field, this cannot be a basis for a finding that the veteran is in need of additional rehabilitation.

> . . . .

> The veteran's present educational level does not preclude him from performing the duties of the occupation for which he was previously found rehabilitated nor is that occupation found to be unsuitable on the basis of his specific employment handicap and capabilities.

Suppl.R. at 10.

## II.

Generally, a veteran who meets the eligibility requirements of 38 U.S.C. § 3102 is entitled to chapter 31 benefits. While it has since been amended, at the time the appellant filed his claim, § 3102 "provided that a veteran applying for chapter 31 benefits must (1) have a service-connected disability 'which is, or but for the receipt of retired pay would be, compensable under chapter 11 of this title,' and (2) be 'determined by the [Secretary] to be in need of rehabilitation because of an employment handicap.'" *Davenport v. Brown*, 7 Vet.App. 476, 481 (1995). (The current version of § 3102 requires a 10% disability rating if the veteran has a "serious employment handicap"; if not, the veteran must have a 20% disability rating. 38 U.S.C. § 3102(1)(A)(i), (2)(A).) "For purposes of chapter 31 a veteran shall be declared rehabilitated when he or she has overcome the employment handicap to the maximum extent feasible as described in paragraph (c), (d) or (e) of this section." 38 C.F.R. § 21.283(a) (1994). One way a veteran obtains this status is by obtaining employment in the field "for which a program of services was provided or in a closely related occupation for at least 60 continuous days." 38 C.F.R. § 21.283(c)(1) (1994). A veteran who has been declared rehabilitated may receive an additional period of training

*only* if the following conditions are met:

(1) The veteran has a compensable service-connected disability and either;

(2) Current facts, including any relevant medical findings, establish that the veteran's service-connected disability has worsened to the extent that the effects of the service-connected disability considered in relation to other facts precludes him or her from performing the duties of the occupation for which the veteran previously was found rehabilitated; or

(3) The occupation for which the veteran previously was found rehabilitated under Chapter 31 is found to be unsuitable on the

basis of the veteran's specific employment handicap and capabilities.

38 C.F.R. § 21.284(a) (1994) (emphasis added); *see also* 38 U.S.C. § 3103(c)(2) (utilizing the same criteria to determine if a veteran with a "serious employment handicap" and whose 12–year period of eligibility under 38 U.S.C. § 3103(a) has expired should receive additional chapter 31 benefits); 38 C.F.R. § 21.44(b) (1994) (same). Thus, the appellant would be entitled to further chapter 31 benefits if either § 21.284(a)(2) or (a)(3) was found to apply to him.

#### A.

▪ The BVA's determination that there was no increase in the appellant's service-connected disability constitutes a finding of fact. In accordance with 38 U.S.C. § 7261(a)(4), we review findings of fact under the "clearly erroneous" standard of review; "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them." *Gilbert v. Derwinski,* 1 Vet. App. 49, 53 (1990). In addition, the BVA is required to provide adequate reasons or bases for its findings and conclusions on all material issues of fact or law. 38 U.S.C. § 7104(d)(1); *see Gilbert,* 1 Vet.App. at 56–57.

In the September 1990 hearing, the appellant testified that the fact that he cannot perform his job causes him a lot of anxiety. Suppl.R. at 53. In a document attached to his VA Form 1–9, he stated that his "service[-]connected disability was found to be affected by noises in the laboratory which my supervisor concluded affected my work." R. at 50. However, neither of these statements establishes that his anxiety disorder causes him to be unable to perform his job. In fact, the evidence of record supports the conclusion that the primary reason he cannot perform his job is that it requires him frequently to lift heavy objects, which he cannot do because of his non-service-connected conditions, namely, ankylosing spondylitis, carpal tunnel syndrome, and a hip disability. For instance, the appellant testified that he "cannot physically do" the duties he has been assigned at his current job, and that they "wear [him] down.... It has brought [him]

a lot of anxiety...." R. at 53. Similarly, a VA counselor who examined the appellant stated:

It is specifically understood that it is not his psychiatric condition that is causing the problem although we can understand him ... getting nervous because of his difficulty in performing the duties [caused by] the non-service[-]connected condition. But it is not the service[-]connected psychiatric [condition] by itself which is preventing him from doing the work.

R. at 36. While the appellant's job may be aggravating his anxiety condition, that issue is not pertinent to the question whether he qualifies for further chapter 31 training under § 21.284(a)(2).

Moreover, even if there were evidence that his service-connected condition prevents him from doing *this job,* that evidence would·not be dispositive. The appropriate standard is whether the worsening of the service-connected disability precludes him "from performing the duties of *the occupation for which [he] previously was found rehabilitated."* 38 C.F.R. § 21.284(a)(2) (emphasis added). Consequently, in order for the appellant to meet the § 21.284(a)(2) standard, the evidence would have to show that he is precluded from working in the occupation he was rehabilitated for, not just the job he now holds. Since the evidence does not establish such a conclusion, a plausible basis exists for the BVA's decision under 38 C.F.R. § 21.284(a)(2), and it must be affirmed.

#### B.

▪ With regard to 38 C.F.R. § 21.284(a)(3), we first note that the Board failed to provide any analysis of that provision or any reasons or bases for its conclusion that his "occupation [is not] found to be unsuitable on the basis of his specific employment handicap and capabilities." R. at 10. Such a "bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor 'clear enough to permit effective judicial review', nor in compliance with statutory requirements." *Gilbert,* 1 Vet.App. at 57.

Second, to the extent that the Board did consider the appellant's occupation "unsuita-

ble," it did so "on the basis of his specific **employment handicap.**" At the time of the BVA's decision, the term "employment handicap" was defined to include the requirement of a causal nexus between an applicant's service-connected disability and his or her employment handicap. The interpretive regulation, 38 C.F.R. § 21.51(c), provided, in pertinent part:

(c) *Components of employment handicap.* Components of employment handicap include:

(1) *Impairment.* This term means the restrictions on employability caused by:

(i) The veteran's service and nonservice-connected disabilities;

. . . .

(2) *Service-connected disability.* The veteran's service-connected disability need not be the sole or primary cause of the employment handicap but *it must materially contribute to the impairment described in paragraph (c)(1) of this section.* Therefore its effects must be identifiable, measurable, or observable.

38 C.F.R. § 21.51(c) (1994) (last emphasis added). However, in *Davenport,* this Court examined whether § 21.51(c)(2) and other subsections of that regulation which include the "materially contribute" requirement were consistent with the underlying statute, 38 U.S.C. § 3102, which does not impose such a requirement. *Davenport, supra.* Concluding that the causal nexus requirement was inconsistent with § 3102, the Court struck down the regulation. *Ibid. Davenport* requires, therefore, that consideration must be given to all of a veteran's disabilities in making a determination under 38 C.F.R. § 21.284(a)(3) because the term "employment handicap" is not limited to impairments caused by service-connected disabilities.

■ It is impossible to tell exactly how the Board construed § 21.284(a)(3) because the decision contains no "reasons or bases" regarding that regulation, but it must be assumed that the Board interpreted the term "employment handicap" in accordance with the regulation then in effect, 38 C.F.R. § 21.51(c)(2). Since that regulation has been stricken, a remand is required to permit the Board to make the determination required by 38 C.F.R. § 21.284(a)(3) under the correct legal standard. Stated another way, the Board must look at all of the appellant's disabilities, service-connected and non-service-connected, when determining whether his employment handicap makes his occupation unsuitable for him.

### III.

Accordingly, the August 15, 1991, BVA decision is AFFIRMED in part and VACATED in part, and the matter is REMANDED for proceedings consistent with this opinion.